UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA DROZD and MICHAEL DROZD,      :
wife and husband,                   :CIVIL ACTION NO. 3:13-CV-2523
                                    :
          Plaintiffs,               :(JUDGE CONABOY)
                                    :
            v.                      :
                                    :
JOHN M. PADRON, d/b/a ATLANTIC      :
MOTOR TEAM, and THOMAS VARIALE,     :
                                    :
          Defendants.               :
                                    :

---

## MEMORANDUM

Here we consider Plaintiffs' Motion for Sanctions (Doc. 32) filed with a supporting brief (Doc. 33) on December 30, 2014. Plaintiffs filed this motion after Defendants failed to appear for their depositions on December 3, 2014, at which their attendance was mandated by Court Order of November 21, 2014 (Doc. 31). Plaintiffs assert that Defendants have failed to offer or substantiate any valid reason for their failure to appear.  (Doc. 32 ¶ 4.)  Plaintiffs further assert that the appropriate sanction pursuant to Federal Rule of Civil Procedure 37 is entry of default judgment against both Defendants, leaving for the jury to determine the appropriate amount of compensatory damages and an appropriate award of punitive damages.  (Doc. 32 at 2.)  For the reasons discussed below, Plaintiffs' motion is granted.

## I. Background

This action arises from a motor vehicle collision which occurred on March 26, 2013. (Doc. 1 ¶¶ 5-9.)  Plaintiff Linda Drozd

was driving southbound on Keyser Avenue in Scranton, Pennsylvania, in a 2007 Nissan Sentra owned by her husband, Plaintiff Michael Drozd.  (Doc. 1 ¶ 5.)  Acting within the scope and course of his employment, Defendant Variale was driving northbound in a 2003 Toyota Sienna owned by Defendant Padron, d/b/a/ Atlantic Motor Team, with the consent and knowledge of the owner.  (Doc. 1 ¶¶ 6-8.)  The words "high idle" and "no brake" were painted on the window on the driver's door.  (*Id.*)  "Suddenly and without warning" Defendant Variale turned his vehicle to his left and directly into the path of the Drozd vehicle.  (Doc. 1 ¶ 9.)  The resulting collision caused numerous serious injuries to Plaintiff Linda Drozd.  (Doc. 1 ¶ 10.)  Plaintiffs also allege that "the collision was caused by the negligent, reckless and wanton conduct of Defendant Variale, acting as the agent, servant and/or employee of Defendant Padron, d/b/a Atlantic Motor Team . . . [b]y operating the Toyota Sienna with knowledge that the vehicle was unfit for safe operation on a public highway."  (Doc. 1 ¶ 12(j).)

The Complaint filed as a result of this accident contains three counts: Count I by Plaintiff Linda Drozd alleging negligent, reckless and wanton conduct on the part of all Defendants; Count II by Plaintiff Linda Drozd against Defendant Padron, d/b/a Atlantic Motor Team, alleging negligent, reckless and wanton conduct based *inter alia* on entrusting the vehicle to Defendant Variale, failing to properly investigate his driving abilities and driving record,

2

and failing to require and instruct him to inspect the vehicle to ensure that it was safe for operation on public roadways; and Count III by Plaintiff Michael Drozd against all Defendants for loss of consortium. (Doc. 1.) On each count Plaintiffs seek compensatory and punitive damages. (*Id.*)

On December 9, 2013, Defendants filed Motion of Defendants to Dismiss Claims of Recklessness, Wantonness, Willfulness and for Punitive Damages from Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7.) By Order of February 11, 2014, the Court denied Defendants' motion, concluding that Defendants had failed to meet their burden of showing that no claim for punitive damages had been presented. (Doc. 19 at 8.) Specifically, the Court stated that "[t]he facts pled indicate that Plaintiffs have presented a plausible claim for punitive damages . . . . While discovery may show a lack of a causal connection between the "no brake" warning and the collision, such a determination would be premature at this stage of the proceedings. (*Id.*)

On October 24, 2014, Plaintiffs filed Plaintiffs' Motion to Compel Depositions of Defendants Padron and Variale. (Doc. 26.) In their supporting brief, Plaintiffs stated the following:

> By letter of August 21, 2014 sent to all defense counsel by email and first class mail, Plaintiffs' counsel scheduled the videotaped deposition of Defendant Thomas Variale for Monday, September 29, 2014 at 10:00 a.m. in the Kingston offices of Plaintiffs' counsel. A notice of videotaped deposition accompanied that letter.

3

> Defendant Variale did not appear for his
> deposition on the morning of September 29,
> 2104.
>
> By letter of September 9, 2014 sent to
> all defense counsel by email and first class
> mail, Plaintiffs' counsel scheduled the
> videotaped deposition of Defendant Padron for
> Thursday, October 16, 2014 at 11:00 a.m. at
> the offices of Plaintiff's counsel in
> Kingston.  A notice of videotaped deposition
> accompanied that letter.  Defendant Padron
> did not appear for his deposition on the
> morning of October 16, 2014.
>
> Defense counsel have advised Plaintiffs'
> counsel that they are unable to provide dates
> of rescheduling the depositions of Defendants
> Varilae and Padron and are unable to concur
> in this motion because Defendants Variale and
> Padron have not consistently responded to
> communications from defense counsel.

(Doc. 27 at 2.)  Defendants did not file a brief in opposition to

Plaintiffs' motion, and the Court granted the motion pursuant to

Local Rule 7.6 of the Local Rules of Court of the Middle District

of Pennsylvania on November 12, 2014.  (Doc. 29.)  With the

November 12, 2014, Order, the Court directed Defendants to appear

for depositions on November 24, 2014.  (*Id.*)

By correspondence dated November 19, 2014, Plaintiffs' counsel

James Wetter, Esq., informed the Court that Defendant Variale's

counsel, James DeCinti, Esq., indicated he had a scheduling

conflict for November 24, 2014, and all counsel agreed to

reschedule the depositions to December 3, 2014.[1]  (Doc. 30.)  Thus,

---

[1] As explained in Plaintiffs' motion for sanctions, although
both Defendants initially were represented by the same counsel,

4

the Court issued an Order on November 21, 2013, amending its November 12, 2014, Order and directing Defendants to appear for depositions on December 3, 2014.  (Doc. 31.)

Before Plaintiffs' counsel sent the November 19, 2014, letter to the Court, he had received an email from Defendant Padron's counsel, Stephanie Herperger, Esq., which stated the following:

> Jim: December 3rd is fine with me and what I can confirm is that I will notify Mr. Padron of that date, that there is a Court order compelling him to appear and that he must appear.  Obviously, I cannot force him to appear and if he doesn't appear, you will have to do what you deem necessary.  I will do my absolute best to get him there though.

(Doc. 41-13 at 2.)

On the afternoon of December 2, 2014, at 2:37 p.m., Attorney DeCinti sent the following email to Plaintiffs' counsel:

> I just got a call from my client, Thomas Variale.  He just started a new medical clinic regiment [sic] and will thus not be able to attend his deposition in Kingston tomorrow, December 3rd.  He tells me that he is available any other day in the next two months except December 11th and January 20th. If you want to circulate some dates, we can look to reschedule.  Thanks for your understanding.  At this point, I will still be at your offices tomorrow in the event Mr. Padron appears.

(Doc. 41-14 at 2.)  At 2:50 p.m., Plaintiffs' counsel responded

---

Defendant Variale is now represented by James DeCinti, Esq., and Defendant Padron is represented by Stephanie Hersperger, Esq., and Stephen Geduldig, Esq.  (Doc. 33 at 3.) DeCinti, Hersperger, and Geduldig are now all attorneys with the law firm of Pion, Nerone, Girman, Winslow & Smith, P.C.  (*Id.*)

with the following: "Do you have any supporting documentation? JMW." (Doc. 41-14 at 3.) Attorney DeCinti immediately responded: "Supporting documentation for what, Jim?" (Doc. 41-14 at 4.) At 3:03 p.m., Plaintiffs' counsel replied: "Medical verifying his inability to attend his court-ordered dep for tomorrow. JMW." (Doc. 41-14 at 5.) Attorney DeCinti answered "I do not." (Doc. 41-14 at 6.)

Both Defendants failed to appear for the December 3, 2014, court-ordered depositions. (Doc. 41 at 10.) A record was made at the time and the transcript indicates that Attorneys Wetter, DeCinti, and Hersperger were present. (Doc. 41 at 10 (citing Doc. 33-3).) No explanation was offered for Mr. Padron's failure to appear. (Doc. 41 at 10.) Attorney DeCinti repeated the information set out in his December 2nd email, adding that Attorney Wetter did not want to provide additional deposition dates "without seeing some evidence or proof of Mr. Variale's medical problems and medical treatment. So I am going to endeavor to provide that to Mr. Wetter, and, hopefully, whatever I can get him will be satisfactory to him to allow us to reschedule the deposition of Mr. Variale." (Doc. 33-3 at 4.) After noting that it was the third attempt to take Defendants' depositions, Attorney Wetter added that "it is my plan to proceed with sanctions against the Defendants at this point. . . . [I]f I'm provided with some medical documentation supporting that [Defendant Variale] could not be here today, I

6

would obviously reconsider as to him."  (Doc. 41 at 10; Doc. 33-3 at 5.)

Defendant Variale has not provided Plaintiffs or the Court with any explanation of his medical reason or a medical excuse for not attending the December 3rd court-ordered deposition.  (Doc. 41 at 10.)

As noted above, Plaintiff's filed the motion under consideration (Doc. 32) and supporting brief (Doc. 33) on December 30, 2014.  Defendant Padron filed his opposition brief (Doc. 37) on January 12, 2015, and Defendant Variale filed his opposition brief (Doc. 38) on January 13, 2015.  With the filing of Plaintiffs' reply brief (Doc. 41) on January 16, 2015, the motion was fully briefed and ripe for disposition.

## II. Discussion

Plaintiffs argue that entry of default judgment against both Defendants is an appropriate sanction pursuant to Federal Rule of Civil Procedure 37.  (Doc. 33 at 6-8; Doc. 41 at 11-15.) Specifically, Plaintiffs request that "the Court rule that it will direct the jury to find that the Defendants were negligent and reckless in causing the collision, thereby leaving for the jury to determine [the monetary] value of the compensatory damages and an appropriate award of punitive damages."  (Doc. 33 at 6-7.)

### A.   *Legal Standard*

Federal Rule of Civil Procedure 37(d) provides that a district

7

court may impose sanctions on a party for failure to attend that person's deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Sanctions may include "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d)(3). The following sanctions are allowed in Rule 37(b)(2)(A)(i)-(vi):

(i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)  striking pleadings in whole or in part;

(iv)   staying further proceedings until the order is obeyed;

(v)    dismissing the action or proceeding in whole or in part;

(vi)   rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A).

The United States Court of Appeals for the Third Circuit has stated that a dismissal with prejudice or default "is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 866 (3d Cir. 1984). *Poulis* added that alternatives are particularly appropriate when the party

8

against whom sanctions are sought "has not personally contributed" to the complained-of conduct. *Id.*

Before entering a sanction order depriving a party of the right to proceed with or defend against a claim, the district court must consider the factors set out in *Poulis*. *See*, *e.g.*, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990). Under *Poulis*, the court considers the following factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868.

## B.   *Poulis Factors*

Though not every *Poulis* factor needs to be satisfied in order to enter default, *see Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008), we will address each factor in turn.

## 1.   Extent of the Party's Personal Responsibility

Plaintiffs assert that the case history and supporting documentation they have submitted show that Defendants' failure to cooperate was both longstanding and deliberate. (Doc. 41 at 11.) Defendants present no evidence that anyone other than Defendants are responsible. Based on the procedural history of this case and

9

the parties' filings, it is clear that Defendants themselves are responsible for their failure to attend the December 3, 2013, court-ordered deposition.

Defendant Padron's attorney informed Plaintiff's attorney that she would do her "absolute best" to have her client attend the deposition (Doc. 41-13 at 2), yet he did not attend. (Doc. 33 at 7.) Nothing has been offered to explain his conduct.

The record also supports Defendant Variale's personal responsibility for his failure to attend the December 3, 2014, deposition. Although Defendant Variale had ample advance notice of the court-ordered deposition date, he called his attorney the afternoon before to inform him he would not be able to attend because he had just started a new medical clinic regimen. (Doc. 41-14 at 2.) Despite this verbal explanation to his attorney, this is not a case where we can find that Defendant Variale's failure to comply with the Court's order removes his personal responsibility in that he provided no documentation of his medical problem or a medical excuse explaining his inability to attend the deposition. This is so particularly in view of the fact that Attorney DeCinti stated that he would attempt to get such documentation (*see* Doc. 33-3 at 4) and, to date, has not done so. Attorney DeCinti clearly understood the importance of obtaining this information. (*See* Doc. 33 at 4.) It is therefore reasonable to assume that if he had been able to obtain medical documentation from Defendant Variale,

10

Attorney DeCinti would have forwarded it to Attorney Wetter and/or the Court.

Because Defendant Padron offered no reason for his failure to appear and Defendant Variale has not established that failure to comply with the Court Order was due to his inability to do so, *see National Hockey League v. Metro Hockey Club*, 427 U.S. 639, 640 (1976), both Defendants are personallly responsible for the failure to appear.  Thus, this factor weighs in favor of Plaintiffs.

## 2.    Prejudice to Plaintiffs

Plaintiffs argue that Defendants failure to appear for their depositions "has handcuffed the Plaintiffs from developing their claim for punitive damages " in that Plaintiffs must show Defendants' requisite state of mind in the time frame leading up to the collision and they cannot adequately do so without deposing Defendants.  (Doc. 33 at 7-8.)

"Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" *Briscoe*, 538 F.3d at 259 (quoting *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873-74 (3d Cir. 1994)).  However, "prejudice is not limited to 'irremediable' or irreparable' harm." *Id.*; *see also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).  Prejudice "also includes 'the burden imposed by impeding a party's ability to

11

prepare effectively a full and complete trial strategy.'" *Id.* (quoting *Ware*, 322 F.3d at 222). *Briscoe* explains that this type of prejudice often involves disputes between the parties on discovery matters because a party was "deprived of necessary information or had to expend costs to obtain compliance." *Id.* (citing *Poulis*, 747 F.2d at 868).

As noted above, Plaintiffs argue they have been deprived of necessary information. (*See*, *e.g.*, Doc. 33 at 7-8.) Defendant Variale asserts that the facts that would have been developed in Variale's deposition are still available and any claim of prejudice is partly Plaintiffs' counsel's failure to respond to the offer to reschedule Variale's deposition. (Doc. 38 at 7.) Defendant Padron argues that the fact that Defendants have responded to Plaintiffs' written discovery weighs against entering default as does Plaintiffs' failure to seek certain information from individuals other than Defendants. (Doc. 37 at 7.) Plaintiffs respond to Defendant Padron's argument regarding discovery with the observation that Defendants never verified any pleading or discovery response, their answers to the Complaint contained no verification, and written discovery responses end with a verification signed by their attorneys.[2] (Doc. 41 at 11.)

---

[2] Plaintiffs add that Plaintiffs' counsel did not assert any impropriety on the identified verification problems, "but defense counsel's diligence does not exonerate their client's conduct." (Doc. 41 at 11.)

Defendant Variale's argument is undermined by Attorney DeCinti's recognition that rescheduling of the deposition and avoiding sanctions were contingent on providing Plaintiffs' counsel with information substantiating the claimed medical problems and treatment.  (Doc. 33-3 at 4.)  Defendant Padron's argument is undermined by the fact that a defendant's state of mind is difficult to ascertain from others.  This is not a case where shifting focus to Plaintiffs' potential alternate discovery opportunities deflects the claimed prejudice.

We agree that Plaintiffs have been prejudiced by Defendants' failure to appear for their depositions.  Despite the possibility that Defendant Variale would appear at a deposition in the future, on balance this factor weighs in favor of Plaintiffs.

## 3.   History of Dilatoriness

Plaintiffs set out a detailed history of efforts to secure Defendants' depositions as evidence of Defendants' longstanding failure to cooperate.  (Doc. 41 at 3-11.)  From that history and other evidence of record, there can be no debate that Defendants have not cooperated with their counsel in defending this action.

Whether this behavior amounts to a "history of dilatoriness" depends on wether Defendants' conduct can be characterized as an "[e]xtensive or repeated delay or delinquency."  *Adams*, 29 F.3d at 874; see also *Ware*, 322 F.3d at 224.  *Adams* adds that "a party's problematic acts must be evaluated in light of its behavior over

13

the life of the case." *Id.* at 875.

Defendants' depositions were originally scheduled for March 11, 2014.  (Doc. 41 at 3.)  They did not take place because Defendant Variale's counsel informed Plaintiffs' counsel that he had not been able to get in touch with his client (Doc. 41 at 3; Doc. 41-2 at 2) and Defendant Padron's counsel was not sure that her client had been notified of the deposition and felt it best to conduct both depositions on one day (Doc. 41 at 3; Doc. 41-3 at 2).

Email exchanges of March 5, 2014, and March 6, 2014, show that Plaintiffs' counsel agreed to postpone the depositions on the condition that they be conducted within sixty (60) days, and Defendants' counsel agreed to provide proposed dates for Defendants' depositions.  (Doc. 41-3 at 3-4.)

Correspondence dated May 1, 2014, from Attorney Wetter to the undersigned, indicates Defendant Variale's counsel had experienced difficulty communicating with his client, Defendant Variale had not yet answered the Complaint or initial discovery requests, and his counsel was making every effort to remedy the situation.  (Doc. 22 at 1.)

In Attorney Wetter's August 12, 2014, correspondence to defense counsel, he states that he had not heard anything about proposed deposition dates and he would select a date for late September if he did not hear from them by the end of the week. (Doc. 41 at 5; Doc. 41-3 at 2-3.)  In his August 21, 2014,

correspondence to defense counsel, Attorney Wetter states he did not receive a response and he was enclosing a Notice of Videotaped Deposition for September 29, 2014, for each Defendant--Defendant Variale's to take place at 10:00 a.m. and Defendant Padron's at 1:30 p.m.  (Doc. 41 at 5; Doc. 41-5 at 2-3.)

On August 26, 2014, Attorney DeCinti informed Attorney Wetter that he was unavailable for the afternoon deposition, adding several dates he would be available.  (Doc. 41 at 5-6; Doc. 41-6 at 2.)

Attorney Wetter continued Defendant Padron's deposition to October 16, 2014; Defendant Variale's deposition remained scheduled for September 29, 2014.  (Doc. 41 at 6; Doc. 41-7 at 2-3.)

On September 25, 2014, Attorney DeCinti informed Attorney Wetter by email that he could not confirm that Defendant Variale would attend the September 29, 2014, deposition because Defendant Variale had not responded to letter or Fed Ex letter and the phone number on record was not in service.  (Doc. 41 at 6; Doc. 41-8 at 2.)

On September 29, 2014, at 5:10 a.m. (less than five (5) hours before Defendant Variale's deposition was scheduled to commence) Attorney DeCinti sent Attorney Wetter an email stating that he had learned late the day before that Defendant Variale was unable to secure transportation to the deposition.  (Doc. 41 at 6-7; Doc. 41-9 at 2.)  Attorney DeCinti added that he "was also advised that Mr.

15

Variale will be unavailable for personal medical reasons for one to five weeks, beginning on Wednesday.  He has assured me that he will keep me posted and that he will sit for a deposition when he is able."  (Doc. 41-9 at 2.)

By email of October 6, 2014, Attorney Hersperger informed Attorney Wetter that she had not heard from Defendant Padron and she intended to send him another letter asking that he contact her by October 10, 2014, and, if he did not do so, she would assume he did not intend to appear for his deposition on October 16, 2014. (Doc. 41 at 7; Doc. 41-10 at 2.)  By email of October 14, 2014, Attorney Hersperger confirmed to Attorney Wetter that she had not heard from Defendant Padron.  (Doc. 41 at 7; Doc. 41 -11 at 2.) Defendant Padron did not appear.

Plaintiffs filed the Motion to Compel Depositions of Defendants Padron and Variale on Octover 24, 2014.  (Doc. 26.) Defendants did not oppose the motion and, by Order of November 12, 2014, the Court granted Plaintiffs' motion and directed Defendants to appear for their depositions on November 24, 2014.  (Doc. 29.) Because of Attorney DeCinti's scheduling conflict (Doc. 41-12 at 2), the Order was amended and the court-ordered depositions were set for December 3, 2014 (Doc. 31).  Notably, in the email seeking a continuance of the December 3, 2014, scheduled court-ordered deposition, Attorney DeCinti stated "I have not been able to reach Mr. Variale, despite continued efforts.  I know you are doing what

16

you need to do, but I cannot produce someone whom I cannot reach."
(Doc. 41 at 8; Doc. 41-12 at 2.)

The events surrounding Defendants failure to appear for their
December 3, 2014, depositions are set out above and need not be
repeated here.

Significantly, defense counsel recognize their clients' lack
of cooperation with the defense of this case.  Regarding Defendant
Padron, Attorney Hersperger stated "[o]bviously, I cannot force him
to appear and if he doesn't appear, you will have to do what you
deem necessary."  (Doc. 41-13 at 2.)  Regarding Defendant Variale,
as of November 15, 2014, Attorney DeCinti stated that he was unable
to contact his client despite continued efforts.  (Doc. 41-12 at
2.)  This is especially noteworthy in that Defendant Variale had
previously been difficult to contact (*see*, *e.g.*, Doc. 41-8 at 2)
and Attorney Wetter reported in his September 29, 2014, email, that
Defendant Variale assured him that he would "keep me posted."
(Doc. 41 -9 at 2.)

Although Defendant Padron's counsel attempts to limit his
history of dilatoriness to his failure to appear for his
depositions on two occasions (Doc. 37 at 7), Defendant Padron
clearly has exhibited problematic behavior over the life of this
case.  *See Adams*, 29 F.3d at 875.  His consistent refusal to
communicate with his counsel and failure to appear at scheduled
depositions are sufficient to find a history of dilatoriness,

17

particularly in light of the fact that there is no mitigating behavior or circumstance.  Therefore, this factor weighs in favor of Plaintiffs as to Defendant Padron.

Defendant Variale's counsel similarly seeks to limit his client's history of dilatoriness, identifying only "his inability to attend two depositions for specific reasons." (Doc. 38 at 8.) Because of the last-minute timing and lack of substantiation of Defendant Variale's proffered excuses for missing the scheduled depositions, his failures to appear cannot be considered an "inability" to appear.  *See National Hockey League*, 427 U.S. at 640.  As noted previously: Attorney Wetter offered Attorney DeCinti the opportunity to substantiate the reason for the December 3, 2014, failure to appear; Attorney DeCinti said he would attempt to do so; to date, no such information has been provided to Plaintiffs or the Court.  Defendant Variale's assertion that he did not have a personal vehicle and public transportation could not be arranged in sufficient time to make the first scheduled deposition (Doc. 38 at 8 n.1) is not a valid excuse for his failure to appear in that he had adequate notice of the deposition and, thus, adequate time to arrange for transportation.  Any excuse related to transportation is also undermined by the fact that ample public transportation exists between the New York metropolitan area and the Scranton/Wilkes-Barre metropolitan area.[3]  Round-the-clock bus

_____

[3]  Defendant Variale's address of record is 9425 134th Avenue, Ozone Park, New York (*see* Doc. 1 ¶ 3); Ozone Park is a neighborhood

service between New York City and Scranton or Wilkes-Barre negates any argument about not having sufficient time to arrange for public transportation.

With no established/valid reasons for his failures to appear at depositions, his lack of contact with his attorney, and his onging failure to take the opportunity to provide *post hoc* documentation for his December 3, 2014, failure to appear, finding a history of dilatoriness on the part of Defendant Variale is warranted.  Thus, this factor also weighs in favor of Plaintiffs as to Defendant Variale.

**4.   Willful or Bad Faith Conduct**

Plaintiffs assert that Defendants' failure to cooperate through the tenure of this litigation has been deliberate.  (Doc. 41 at 11.)  Defendant Variale asserts his conduct was not willful or in bad faith because he was unable to attend the depositions due to a medical condition and transportation problems.  (Doc. 38 at 8.)  Defendant Padron does not address this factor.

With this factor, we must consider "whether the conduct was 'the type of willful or contumacious behavior which was characterized as flagrant bad faith.' . . . Generally, 'wilfullness involves intentional or self-serving behavior.'" *Briscoe*, 538 F.3d at 262 (quoting *Adams*, 29 F.3d at 875).  Conduct which is "merely

---

in the New York City borough of Queens, New York (*see* Doc. 38 at 8 n.1).

negligent or inadvertent" is not considered contumacious conduct. *Id.* (citing *Poulis*, 747 F.2d at 868-69).

We have no indication that Defendant Padron's conduct was anything but intentional and self-serving.  Thus, this factor weighs in favor of Plaintiffs as to Defendant Padron.

For the reasons discussed previously, we have no substantiated reason for Defendant Variale's conduct.  Defendant Variale's argument that his conduct was not willful or in bad faith as evidenced by his "continuing offer of availability" is not persuasive in that it is directly undermined by his ongoing failure to provide documentation for his December 3, 2014, failure to appear.  Looking at Defendant Variale's conduct through the course of this litigation, we find it is best characterized as "intentional and self-serving"; we have not been given sufficient evidence to conclude his conduct is "merely negligent or inadvertent." *Briscoe*, 538 F.3d at 262.  Therefore, this factor weighs in favor of Plaintiffs as to Defendant Variale.

## 5.    Effectiveness of Other Sanctions

Plaintiffs argue that the sanction of entry of default, including on their claims for punitive damages, is warranted "in the face of Defendant's [sic] extreme obstructionism."  (Doc. 41 at 11-12.)  Defendant Padron suggests numerous alternative sanctions. (Doc. 37 at 9.)

As set out previously, Federal Rule of Civil Procedure

20

37(b)(2)(A) provides for numerous sanctions. *Chimenti v. Kimber*, Civil No. 3:CV-01-0273, 2010 WL 26500506, at *3 (M.D. Pa. July 1, 2010), notes that "[e]ntry of default is the only meaningful remedy available to sanction a party who deliberately fails to defend an action."

Here we do not have a total failure to defend this action; Defendants' counsel appear to have diligently represented their clients with no evidence of their clients' assistance or cooperation.  Defendant Padron's counsel has basically acknowledged this. (*See*, *e.g.*, Doc. 41-13 at 2.)  Defendant Variale's counsel has also acknowledged this at times (*see*, *e.g.*, Doc. 22 at 1; *see also* Doc. 41-8 at 2) although he attempts to negate these problems by highlighting Defendant Variale's eleventh-hour contact with him and a purported willingness to be deposed.  As discussed previously, the veracity of any assurances by Defendant Variale are undermined by his demonstrated lack of respect for his obligation to defend this action and comply with the schedule established for the orderly progression of this case.

Defendant Padron suggests sanctions other than default: preclude Defendants from testifying at trial; preclude Defendants from offering any defense to the claims of negligence; and preclude Defendants from offering affirmative evidence that the words "high idle" and "no brake" were written on the vehicle (Toyota Sienna) only after the accident.  (Doc. 37 at 9.)

Plaintiffs assert that finding as a matter of law that Defendants were negligent "is not much of a sanction" in that the collision was captured on video by the security camera of a nearby business and it clearly shows the Toyota crossing over the center lines and striking the vehicle driven by Plaintiff Linda Drozd "nearly head on" and in her lane of travel.  (Doc. 33 at 7.)

We agree with this assessment.  We also conclude that the other sanctions suggested by Defendant Padron do not factor in the problem of getting from here to the disposition of this matter without the cooperation of Defendants Variale and Padron.  It is apparent that Defendants' attorneys have attempted to apprise their clients of the need to participate in the defense of this action but they have not been able to persuade their clients of the need to do so.  Furthermore, as diligent as defense counsel may be in attempting to limit the consequences of Defendants' inaction, their clients' lack of participation to date is a major consideration in deciding the appropriate sanction.

Because we have no reason to expect a change in Defendants' contumacious conduct, the effectiveness of other sanctions is extremely questionable.  Therefore, this factor weighs in favor of Plaintiffs.

6.   **Meritoriousness of the Claim or Defense**

"In considering whether a claim or defense appears to be meritorious for this inquiry, we do not purport to use the summary

judgment standards.  A claim, or defense, will be deemed
meritorious when the allegations of the pleadings, if established
at trial, would support recovery by plaintiff or would constitute a
complete defense." *Poulis*, 747 F.2d at 869-70 (citations omitted).
Where a claim has previously withstood a motion to dismiss, it has
been found meritorious.  *See Ware*, 322 F.3d at 225.

    With their motion to dismiss, Defendants sought only dismissal
of Plaintiff's punitive damages claim.  (Doc.  7.)  As set out
previously, the Court denied the motion, concluding Defendants had
failed to meet their burden of showing that no claim for punitive
damages had been presented.  (Doc. 19.)  Specifically, the Court
stated that "[t]he facts pled indicate that Plaintiffs have
presented a plausible claim for punitive damages . . . .  While
discovery may show a lack of a causal connection between the "no
brake" warning and the collision, such a determination would be
premature at this stage of the proceedings.  (Doc. 19  at 8.)

    Defendants did not seek dismissal of Plaintiffs' negligence
and loss of consortium claims nor do they now argue these claims
lack merit.  As noted above, Plaintiffs point to video showing
Defendants' vehicle crossing into the opposing lane of traffic and
striking Plaintiffs' vehicle.  (Doc. 33 at 7.)

    Defendants argue that default is not appropriate on
Plaintiffs' claim of recklessness because they have not presented
evidence that their claim of recklessness may be meritorious.

23

(Doc. 37 at 8; Doc. 38 at 8.)  Defendant Variale further states
that "entry of default on the claim of reckless conduct would
subject Thomas Variale to punitive damages to which the Plaintiffs
are not entitled, as Mr. Variale did not act with the culpable
state of mind to support such a penalty and award against him.."
(Doc. 38 at 8.)

Evidence of Defendants' state of mind is lacking because
Defendants did not appear at their depositions.  Defendants'
reliance on the lack of such evidence is misplaced as the
responsibility for the deficit must be squarely placed on their
shoulders.  Furthermore, under the *Ware* standard, the fact that the
claims of recklessness survived the motion to dismiss allows a
finding of meritoriousness under this factor.  *See Ware*, 322 F.3d
at 225.  Thus, this factor weighs in favor of Plaintiffs.

7.   **Balancing *Poulis* Factors**

The analysis set out above, shows that all *Poulis* factors
weigh in Plaintiffs' favor.  The parties disagree on the
appropriate contours of the default sanction: Plaintiffs urge that
an entry of default judgment on their claim for punitive damages is
appropriate under the circumstance of this case (Doc. 41 at 11-12);
Defendants assert that entry of default on a claim for punitive
damages is not appropriate under Third Circuit case law (Doc. 37 at
8-9; Doc. 38 at 5-6).  We will briefly address this disagreement.

"A consequence of the entry of a default judgment is that 'the

24

factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2688 at 444 (2d ed. 1983)). *Comdyne* adds that "[a]s a general proposition, punitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they are clearly not liquidated or computable." 908 F.2d at 1152 (citations omitted). Under Pennsylvania law, which applies in this diversity action, "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 871 A.2d 766, 770-71 (Pa. 2005).

Defendants quote *Burke v. Maasen*, 904 F.3d 178, 183 (3d Cir. 1990), in support of their argument that entry of default on Plaintiffs' claims of recklessness is not appropriate: "'punitive damages are intended to deter risky behavior that causes harm; they are not a sanction for obstruction of justice.'" (Doc. 37 at 8; Doc. 38 at 5-6.) Plaintiffs assert that *Burke* does not involve a request for default judgment or an award of punitive damages under Rule 37--our Circuit Court was reviewing a jury's award at trial of punitive damages against a defendant. (Doc. 41 at 13.)

We agree with Plaintiffs that *Burke* does not address the

25

situation before us.  Defendants have pointed to no caselaw that prevents applying the default sanction to a claim of recklessness. Plaintiffs claims of recklessness do not necessarily relate to the *amount* of damages; they relate to the *type* of damages available to Plaintiffs.  With this motion, Plaintiffs seek a *future* determination of "an *appropriate* award of punitive damages."  (Doc. 32 at 2 (emphasis added).)  Under *Comdyne*, for an award of punitive damages to be *appropriate* Plaintiffs will have to present "evidence beyond the mere pleadings" to show the type of conduct that would support punitive damages.  908 F.2d at 1153.  Any real or perceived tension between the sanction of default as to Plaintiffs' claims of liability and a future award of punitive damages will, as a practical matter, be resolved in future proceedings on damages. Thus, the sanction of default as to Plaintiffs' claims of liability is appropriate with the issue of damages to be addressed in accordance with Rule 55(b)(2).

### III. Conclusion

For the reasons discussed above, we conclude that Plaintiffs' Motion for Sanctions (Doc. 32) is properly granted.  Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi), default judgment on liability is entered against Defendants.  The Court will separately issue a scheduling order regarding proceeding on the issue of damages pursuant to Federal Rule of Civil Procedure

26

55(b)(2).   An appropriate Order will be filed simultaneously with this action.

 

 

 

                                                S/Richard P. Conaboy
                                                RICHARD P. CONABOY
                                                United States District Judge

DATED: February 6, 2015